## NATIONAL W. C. T. U. et al. v. ANDERSON et al. (No. 8160.)

Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1929.

Rehearing Denied March 20, 1929.

Briscoe & Morris and Joe L. Hill, all of San Antonio, for appellants.

Douglas, Carter & Black and Denman, Franklin & Denman, all of San Antonio, for appellees.

COBBS, J. This suit was filed by appellee T. D. Anderson and others, executors and trustees of the estate of M. Eleanor Brackenridge, against the National W. C. T. U., the W. C. T. U. of the state of Texas, the W. C. T. U. of San Antonio, of which Mrs. Holt is president, and the W. C. T. U. of Bexar county, of which Mrs. Thomas was president, alleging that the W. C. T. U. of which Mrs. Thomas is president was the W. C. T. U. of Bexar county. The names of the officers have been changed from time to time.

The controversy arose over the $5,000 bequest in the will and deed in trust made by Miss Eleanor Brackenridge, in which she gave to the W. C. T. U. of San Antonio $5,000, to be paid $25 per month for a certain number of years, and then the whole amount to be paid to the W. C. T. U. of San Antonio. Some of the members of the San Antonio W. C. T. U. bolted and organized another similar society.

After a number of members left the regular organization, a charter was granted them by the state for what was known as the Thomas faction—all the charter members belonging to that faction. The charter was for "W. C. T. U. of Bexar County." This charter was granted after the death of Miss Brackenridge.

The other faction was known as the Glass faction, and remained in the regular organization.

A meeting was called on September 3, 1925, by the Thomas faction, and an election was held by them, and Mrs. Hopkins was elected president. That faction elected 21 delegates to go to a state meeting at Dallas. The Dallas meeting was not the meeting of the regular members of the organized W. C. T. U. Miss Jessie Fuqua, a member of the Thomas faction, swore: "The regular W. C. T. U. of Texas met at Waxahachie. The Dallas meeting elected Mrs. Claude Carter president of the W. C. T. U. of Texas and started a new paper called 'The Star.' We paid the expenses of 21 delegates to the Dallas meeting. This meeting, however, was not intended as a new W. C. T. U. but was only a protesting group of ladies independent, who wished to make objection to the regular State president in her rulings and in her stand on certain political issues, and when we sent a committee from the Dallas meeting to the regular State W. C. T. U. at Waxahachie we were trying to correct the errors which the State Union had made. There was no charter mentioned. We only took out the charter for the W. C. T. U. of Bexar County to be used in case the faction then called the Glass faction should sue us and try to keep us from using the name W. C. T. U." This witness did not claim that the Thomas faction or the state organization were regular, but always called the state meeting, to which the Glass faction adhered and by whom it was recognized, the regular W. C. T. U. of Texas.

Mrs. Wade Lewis of the Thomas faction described the officers of the Glass faction as the "regular officers," and said that "Mrs. Glass and the regular officers" did not attend the meeting of September 3, 1925.

Mrs. Claude Carter, president, elected at the Dallas meeting, called her organization the "protesting or bolting faction." She testified, when asked what the state dues of the regular W. C. T. U. of the state of Texas were, that, not having any connection with it, she could not tell what the dues are; "that her faction had nothing to do with the W. C. T. U. of the State of Texas." Mrs. Carter gives the reason for her faction leaving the regular organization as: "We did not want a president whose husband is working in the Comptroller's office on the Ferguson pay roll. We wanted a change in the personnel and policy which they refused, is

the reason we organized the protesting or bolting faction. We wanted to be lined up with the moral forces and not used by Ferguson Forum endorsing Mrs. Ferguson."

All of the witnesses for the Thomas faction spoke of the Glass faction and the state organization to which they belonged as the regular W. C. T. U. of Texas. Mrs. Claud Van Watts, the president of the regular state organization, stated that the division occurred on account of politics in 1924. She said: "The trouble grew out the fact that part of the San Antonio Union was in favor of Felix Robinson for governor, and this faction was trying to force me as president to support him, and I refused to do so because he has always been a wet and drinking man. Later they accused me of being in favor of the Fergusons, but this was not true. I refused to support either Ferguson or Felix Robinson, and the fact that I refused to support Robinson caused a fight on me in the State Convention." Mrs. Van Watts defeated a candidate put in the race by the Thomas faction of San Antonio.

The facts showed that Mrs. Glass was a great friend of Miss Brackenridge, and that her friendship for Mrs. Glass weighed with her in making the bequest to the W. C. T. U. of San Antonio. Mrs. Glass at no time forsook the regular local organization, which has at all times been recognized by the regular national and state bodies. The evidence clearly demonstrates that the organization to which Mrs. Glass has always belonged is the same regular organization to which Miss Brackenridge belonged, and to which she intended and did bequeath the $5,000. The Thomas faction, by bolting and obtaining a charter from the state under a new name, put itself out of the fold, and has never been recognized by any authority as being the regular W. C. T. U. of San Antonio. The constitution of the W. C. T. U. of San Antonio recites: "This organization shall be known as the Woman's Christian Temperance Union of San Antonio, auxiliary to the Woman's Christian Temperance Union of Texas." A bolting faction with a different name, known as the Thomas faction, severed all connection with the state and national organizations, and by all known rules are outside the organization with no rights to a bequest made to the regular local organization. The local body draws its life, its existence, from its recognition by, and adherence to, the state organization, which was dependent on the national organization. The subordinate which is regular and legitimate under the constitution and by-laws of the higher bodies is always the organization recognized by courts. This must, in the interest of har-

mony, order, and uniformity, necessarily be the rule.

Mr. Thomas H. Franklin, a learned lawyer of San Antonio, drew the instruments making the gift, and he more than any other understood the wishes of the deceased, and knew the beneficiary. At that time there was but one W. C. T. U. in existence in San Antonio.

Mr. Franklin testified: "I asked Miss Brackenridge if the said Woman's Christian Temperance Union of San Antonio, Texas, was a corporation, and she stated that she did not know, but that it was an organization connected with the Woman's Christian Temperance Union of the United States; that she did not wish to make the Woman's Christian Temperance Union of the United States a direct beneficiary under the trust because she wanted the local organization to have the use of the money. She further stated that Mrs. Glass was connected with the local organization she intended to be benefited under the deed in trust, and I think said that Mrs. Glass was the President or head of the organization, but my memory is not clear as to whether that statement was made to me by her or the statement that Mrs. Glass was connected in some way, not now clearly recalled, with the Association to be benefited."

Ordinarily all conveyances to be valid should have a named grantee. It is likewise true that in all wills there must be a named beneficiary in existence at the time of the execution of the instrument. The courts nor any person is at liberty to change the name of a beneficiary. So we must ascertain who it was the grantor had in mind at the time. Miss Brackenridge herself was a member of this society, and certainly knew her own preference; she was making the donation to the society of which she and Mrs. Glass were members. Indeed, the society of which Mrs. I. V. Glass was a member was the only one in existence at the time, and she could not have intended any other.

For the reasons given, we think the court erred in its judgment, and the same is set aside, and judgment is here rendered in favor of appellants.

Reversed and rendered.

On Motion for Rehearing.

This court has found all of its conclusions of fact from uncontradicted evidence and admissions upon the part of the appellees. They form the Thomas faction that admittedly did not belong to the regular organization, but formed a new organization not recognized by the regular state and national organizations.

There is no merit in the motion for rehearing, and it is overruled.